**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

TIFFANY HARLEY,

                Plaintiff,                          CASE NO.:

        v.                              JURY TRIAL DEMANDED

PUBLIX SUPER MARKETS, INC.,

                Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, TIFFANY HARLEY ("Plaintiff" and/or "Ms. Harley"), by and through her undersigned counsel, hereby complains of Defendant, PUBLIX SUPER MARKETS, INC. ("Defendant" and/or "Publix"), and alleges as follows:

**INTRODUCTION**

1.      Ms. Harley, a dedicated employee of Defendant for over 13 years, brings this to seek redress for the Defendant's callous and unlawful acts of discrimination and retaliation that she was forced to endure due to her pregnancy and related medical conditions.

2.      Ms. Harley brings this action against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg ("PWFA"); Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA"); the Family and Medical Leave Act, 29 U.S.C. § 2612 ("FMLA"); the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes ("FCRA"); and the Miami-Dade County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26 ("MDHRO").

**PARTIES**

3.      Ms. Harley is an individual female residing in Miami-Dade County, Florida.

4.      Defendant is a Florida corporation, with its principal place of business located at 3300 Publix Corporate Pkwy, Lakeland, Florida 33811.

5.      At all relevant times, Ms. Harley was employed at Defendant's Miami Beach store, located at 1100 6th St, Miami Beach, Florida 33139.

6.      The exact number of Defendant's employees is unknown, but upon information and belief, there are well more than the statutory minimum under Title VII, the PWFA, the ADA, the FCRA, and the MDHRO.

7.      At all relevant times, Defendant was an "employer" within the meaning of 29 U.S.C. § 2611(4)(a), 42 U.S.C. § 2000e(b), and § 11A-25 of the MDHRO.

8.      At all relevant times, Defendant was a "covered entity" within the meaning of 42 U.S.C. § 2000gg(2).

9.      At all relevant times, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000gg(3) and 42 U.S.C. § 12111(4).

10.     At all relevant times, Plaintiff was an "eligible employee" of Defendant within the meaning of 29 U.S.C. § 2611(2).

11.     At all relevant times, Plaintiff was a "qualified employee" within the meaning of 42 U.S.C. § 2000gg(6) and a "qualified individual" within the meaning of 42 U.S.C. § 12111(8).

12.     At all relevant times, Defendant was a "person" within the meaning of § 760.02(6), Florida Statutes, and an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and § 760.02(7), Florida Statutes.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f); 29 U.S.C. § 2000gg-2(a); and 29 U.S.C. § 2617(a).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida. The Defendant was and is still located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**ADMINISTRATIVE PREREQUISITES**

15.     Ms. Harley has complied with all administrative requirements to file this action.

16.     On or around October 20, 2023, Ms. Harley timely dual-filed a charge of discrimination (Charge No. 510-2023-09066) against Defendant with the Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

17.     On or around June 11, 2024, the EEOC issued Ms. Harley's Notice of Right to Sue against Defendant.

18.     On or around June 25, 2024, the MDCHR issued Ms. Harley's Notice of Right to Sue against Defendant.

19.     Ms. Harley is timely commencing this action within ninety (90) days of receipt of the EEOC's Notice of Right to Sue and the MDCHR's Notice of Right to Sue.

20.     Ms. Harley is timely commencing this action more than one-hundred eighty (180) days following the filing of her charge of discrimination.

**FACTUAL ALLEGATIONS**

21.     In or around 2010, Ms. Harley was hired by Defendant as a Bakery Clerk.

22.     At all relevant times, Ms. Harley was considered an exemplary employee. Ms. Harley had a history of positive performance and received numerous promotions during her more than 13 years working for Defendant, working her way up to the position of Pharmacy Manager in or around October 2021.

23.     At all relevant times, Ms. Harley was an individual pregnant female.

24.     Throughout Ms. Harley's employment, Defendant subjected Ms. Harley to discriminatory treatment and retaliation on the basis of her pregnancy and medical conditions.

25.     Defendant's discriminatory and retaliatory conduct was severe, pervasive, and included, but was not limited to, denying Ms. Harley the terms and conditions of employment afforded to other non-pregnant employees, maliciously refusing to provide her with fair and equitable pay raises, consistently issuing inaccurate and damaging performance evaluations, brazenly disclosing her private medical information without her consent, failing to properly administer Ms. Harley's benefits, and constructively terminating her employment.

26.     At all relevant times, Ms. Harley experienced significant physical impairments and limitations related to her pregnancy, including but not limited to severe swelling (edema), persistent fatigue, frequent nausea, episodes of lightheadedness, difficulty standing for prolonged periods, and an inability to perform heavy lifting. These conditions substantially limited her ability to perform major life activities such as standing, walking, and lifting.

27.     At all relevant times, Ms. Harley had a recognized disability, specifically a pregnancy-related medical condition known as Protein S Deficiency. This condition substantially

limits one or more major life activities, including her ability to work, perform manual tasks, and manage bodily functions associated with pregnancy. Protein S Deficiency is a blood clotting disorder that significantly increases the risk of developing blood clots, especially during pregnancy, leading to severe physical limitations and necessitating medical supervision.

28.     Despite her disability and/or pregnancy-related medical conditions, Ms. Harley was able to perform the essential functions of her job with reasonable accommodations. Ms. Harley consistently exceeded performance expectations, as evidenced by her numerous promotions and positive performance evaluations during her 13 years of employment with Defendant.

29.     During her employment with Defendant, Ms. Harley requested reasonable accommodations due to her disability and pregnancy-related medical conditions, including but not limited to, being provided an extra day off between Ms. Harley's shifts, limiting the length of her work shifts to a maximum of eight hours, and scheduling Ms. Harley for morning shifts rather than evening shifts. These requests were supported by medical certification forms completed by her physician.

30.     Defendant failed to reasonably accommodate Ms. Harley's disability or pregnancy-related medical conditions without justification and blatantly disregarded her protected rights.

31.     In or around 2021, Ms. Harley found out she was pregnant and was excited to learn that she was expecting her first child. Unfortunately, Ms. Harley suffered a miscarriage in or around January of 2022.

32.     As a result of the miscarriage, Ms. Harley required surgery and took several weeks of leave in order to recover.

33.     Several months later, in or around March of 2022, Ms. Harley had her first performance evaluation in her role as a Pharmacy Manager.

34.     Throughout her tenure as Pharmacy Manager with Defendant, Ms. Harley regularly exceeded performance expectations and received recognition for her accomplishments.

35.     Despite having exemplary job performance, Defendant offered Ms. Harley only a 3% pay raise.

36.     In or around April of 2022, Defendant implemented a company-wide standardized wage increase, which raised the minimum pay for all positions, including Ms. Harley's position.

37.     This standardized pay increase raised the minimum pay scale for a Pharmacy Manager to an amount higher than Ms. Harley's current pay, effectively neutralizing the effect of the measly 3% pay raise she had received.

38.     As a result of the standardized increase and minimal pay raise for Ms. Harley, an employee starting their first day as a Pharmacy Manager would have received the same pay rate as Ms. Harley, despite her performance record and tenure.

39.     Ms. Harley believed she was not given a higher pay increase due to her past pregnancy and pregnancy-related leave requests.

40.     In or around April of 2022, Ms. Harley met with George Phelan ("Phelan"), an individual male who was employed by Defendant as District Manager, to address her concerns regarding her pay rate.

41.     At all relevant times, Phelan held supervisory authority over Ms. Harley, including the power to hire, fire, and demote/promote Ms. Harley.

42.     Phelan failed to address Ms. Harley's complaints in a meaningful way and told her "That is just how it is."

43.     Despite Phelan's lack of corrective action, Ms. Harley shared her ambitions with Phelan and informed him that she one day hoped to be a District Manager for Defendant.

44.     Around this same time, Ms. Harley learned she was pregnant again.

45.     In or around November of 2022, Ms. Harley requested an accommodation from Defendant due to her disability and pregnancy-related medical conditions. Specifically, Ms. Harley requested that Defendant allow her an an additional day off in between her scheduled work shifts.

46.     Ms. Harley submitted a medical certification form completed by her physician to Jamille Acosta ("Acosta"), an individual female who was employed by Defendant.

47.     Defendant allowed Ms. Harley her requested rest period in between scheduled work days and required that she use her FMLA intermittent leave benefits.

48.     On or around January 6, 2023, Ms. Harley gave birth to her first child. Following her delivery, Ms. Harley exercised her leave benefits in order to recover and spend time with her child.

49.     On or around May 28, 2023, Ms. Harley returned to work with Defendant.

50.     Upon Ms. Harley's return to work, she learned that Defendant had conducted Ms. Harley's annual performance evaluation in March of 2023, while she was out on FMLA leave due to her pregnancy.

51.     Ms. Harley was not notified that her annual performance evaluation had been conducted while she was on leave and only learned of it upon her return to work. Ms. Harley also learned that she had again received a minimal pay increase as part of her annual evaluation. Ms. Harley's pay raise was so minimal, that the effect of the increase was again neutralized by a standardized raise that was taking effect on May 27, 2023.

52.     Not only did Defendant fail to provide Ms. Harley a meaningful pay raise yet again, but also denied her the ability to be present for her evaluation and address her concerns.

53.     In or around June of 2023, Ms. Harley began to be supervised by Lauren Romero ("Romero"), an individual female who was employed by Defendant as District Manager.

54.     At all relevant times, Romero held supervisory authority over Ms. Harley, including the power to hire, fire, and demote/promote Ms. Harley

55.     In or around June of 2023, Ms. Harley also learned that she was pregnant and expecting her second child. While the pregnancy was welcome news for Ms. Harley, she feared that Defendant would escalate its hostility towards Ms. Harley on account of her pregnancy and medical conditions.

56.     Due to complications from her last delivery and her ongoing medical conditions, Ms. Harley's physician recommended that she request scheduling accommodations to ensure her health and that of her unborn child.

57.     At the recommendation of her physician, Ms. Harley requested accommodations from Defendant for her pregnancy and medical conditions.

58.     Specifically, Ms. Harley requested that the length of her shifts be limited to 8 hours rather than 12 hours due to the harsh impact of extended shifts on her physical health, and that she be scheduled for morning shifts rather than evening shifts because her symptoms got progressively worse throughout the day.

59.     Ms. Harley submitted a medical certification form completed by her physician verifying the need for the accommodations.

60.     Defendant initially granted Ms. Harley the accommodations, only to deny her the accommodations without any meaningful explanation just two weeks later.

61.     Around this same time, Defendant began listing the details of Ms. Harley's medical condition on the online work schedule, making her private medical information available for other employees to see without her consent or any prior notice.

62.     In addition to the humiliation Defendant subjected Ms. Harley to by disclosing her medical information to others, Defendant routinely labeled Ms. Harley's regularly scheduled days off as designated leaves of absences under the FMLA or under her Paid Time Off ("PTO") benefits.

63.     Defendant's careless mismanagement of Ms. Harley's scheduling and accommodation requests made it nearly impossible for Ms. Harley to keep track of her protected leave benefits and interfered with Ms. Harley's rights under the FMLA.

64.     On or around June 13, 2023, Ms. Harley received a telephone call from Romero informing her that Defendant was no longer going to accommodate Ms. Harley's pregnancy and medical conditions.

65.     Romero told Ms. Harley that she could either: (1) be demoted to a part-time position, which would cause her to lose many of her benefits, or (2) go on disability leave for seven weeks. Romero refused to provide Ms. Harley with an explanation as to why Defendant refused to provide the accommodation.

66.     Ms. Harley was left with no option but to continue to work in her position without the accommodation and at the expense of her health and well-being.

67.     Ms. Harley asked to meet with Romero to discuss the issues surrounding her performance evaluation and rate of pay.

68.     When Ms. Harley met with Romero, she complained about the fact that the evaluation was conducted without her, and that the evaluation was not an accurate reflection of

her work performance. Ms. Harley also complained about Defendant's failure to meaningfully increase her pay.

69.     Romero failed to address Ms. Harley's concerns and suggested that she speak with Maria Galvez ("Galvez"), an individual female employed by Defendant as a Pharmacy Operations Manager.

70.     Ms. Harley followed Romero's instruction and spoke with Galvez via telephone. Galvez in turn, instructed Ms. Harley to speak with Phelan regarding her complaints.

71.     Ms. Harley then contacted Phelan and shared her complaints again with him. In response, Phelan asked Ms. Harley to send him an email stating why she deserves to receive a raise. Ms. Harley sent the email as instructed but did not receive a response.

72.     Undeterred by the inaction of her supervisors, Ms. Harley also brought her concerns to Maria Delly ("Delly"), an individual female employed by Defendant as a Human Resources Representative.

73.     In response, Delly stated she would look into the matter and get back to Ms. Harley. Delly failed to respond to Ms. Harley. Ms. Harley sent a follow-up email to Delly and included Delly's supervisor on the email in hopes it might spur a response.

74.     Delly eventually spoke with Ms. Harley via telephone. On the call, Delly stated that Romero, Phelan, and Galvez all had different explanations and that even Delly could not determine why they were refusing Ms. Harley a meaningful raise in pay.

75.     Delly's only suggestion was that Ms. Harley make a formal complaint to Defendant.

76.     In or around August of 2023, Ms. Harley sent several emails to Defendant's management complaining about her inaccurate performance evaluations and failure to receive a

meaningful raise, her FMLA benefits and PTO benefits being administered incorrectly; and her accommodation requests being denied without any explanation.

77.     Defendant failed to take any corrective action in response to Ms. Harley's complaints.

78.     Undeterred by Defendant's inaction, Ms. Harley also submitted a formal complaint to Defendant on or around August 10, 2023.

79.     During this time Ms. Harley continued to experience discriminatory treatment on the basis of her pregnancy and pregnancy-related condition/disability.

80.     By means of example, in or around August of 2023, Ms. Harley was scheduled to work a shift from 5:00 AM to 5:00 PM. During the shift, Ms. Harley became extremely ill due to her pregnancy.

81.     When Ms. Harley contacted Lilie Sabater ("Sabater"), an individual female employed by Defendant as District Manager, to request that she be relieved from her shift, Sabater screamed at Ms. Harley and became irate.

82.     After Ms. Harley reiterated how ill she was feeling, Sabater callously responded by telling Ms. Harley to "eat some crackers."

83.     Defendant's discriminatory treatment towards Ms. Harley eventually became too much to bear. Ms. Harley felt as if she had no choice but to resign from her position in the interest of her health and safety, and that of her unborn child.

84.     On or around August 22, 2023, Defendant constructively terminated Ms. Harley.

85.     Defendant made Ms. Harley's work conditions so onerous, abusive, and intolerable, that no woman in her shoes would have reasonably been expected to continue working for Defendant, such that Ms. Harley's resignation was not a matter of choice or free will.

86.     The events described above are just some of the examples of unlawful discrimination and retaliation that Defendant subjected Ms. Harley to on a continuous and on-going basis throughout her employment.

87.     Defendant unlawfully discriminated against Ms. Harley because of her pregnancy and disability.

88.     Defendant failed to reasonably accommodate Ms. Harley's pregnancy and disability accommodation requests as required by law.

89.     Defendant retaliated against Ms. Harley for asserting her rights and for requesting reasonable accommodations on account of her pregnancy and medical conditions.

90.     Defendant interfered with Ms. Harley's protected rights under the FMLA and retaliated against her for exercising her leave benefits under the FMLA.

91.     Defendant violated Title VII, the PWFA, the Americans with Disabilities Act, the Florida Civil Rights Act, and the Miami-Dade County Human Rights Ordinance by subjecting Ms. Harley to a hostile work environment, disparate treatment, and retaliation.

92.     Defendant exhibited a continuous practice of discrimination, and Ms. Harley therefore makes all claims herein under the continuing violations doctrine.

93.     As a result of the acts and conduct complained herein, Ms. Harley has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Ms. Harley has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Ms. Harley has further experienced severe emotional and physical distress.

94.     As a result of Defendant's actions, Ms. Harley felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

## CAUSES OF ACTION
### COUNT I
### 42 U.S.C. § 2000e-2
### *Title VII Discrimination*

95.    Ms. Harley reincorporates the factual allegations in Paragraphs 21 through 94.

96.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

97.    Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

98.    Title VII defines "because of sex" and "on the basis of sex" to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions" and requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).

99.    Ms. Harley was an individual female and was therefore a protected class member.

100.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

101.    Defendant subjected Ms. Harley to discriminatory treatment on the basis of her sex and pregnancy, including but not limited to, failing to accommodate Ms. Harley's pregnancy and pregnancy-related conditions, denying Ms. Harley the terms and conditions of employment afforded to other non-pregnant employees, refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly

disclosing Ms. Harley's private medical information without her consent, failing to properly administer Ms. Harley's benefits, and unlawfully constructively terminating Ms. Harley's employment.

102.    Defendant targeted Ms. Harley because of her sex and pregnancy. No similarly situated male employees endured the discriminatory conduct that Ms. Harley was forced to endure.

103.    The discriminatory actions of the Defendant against Ms. Harley, as described and set forth above, constitute an adverse employment action for the purposes of Title VII.  In subjecting Ms. Harley to adverse employment actions, the Defendant intentionally discriminated against Ms. Harley with respect to the compensation, terms, conditions, or privileges of her employment.

104.    Even if Defendant could assert legitimate reasons for its adverse actions taken against Ms. Harley, her protected class status, at a minimum, was a motivating factor for Defendant's discriminatory conduct and Ms. Harley explicitly reserves the right to pursue a mixed-motive theory against Defendant.

105.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of Title VII, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

106.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Harley's rights under Title VII, warranting the imposition of punitive damages, in addition to compensatory damages.

107.    The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under Title VII.

108.    Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT II**
**42 U.S.C. § 2000e-3**
*Title VII Retaliation*

109.    Ms. Harley reincorporates the factual allegations in Paragraphs 21 through 94.

110.    Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

111.    Ms. Harley was an individual female and was therefore a protected class member.

112.    Ms. Harley engaged in a protected activity opposed Defendant's discriminatory conduct on account of her sex and pregnancy.

113.    In response to Ms. Harley asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Ms. Harley.

114.    Defendant retaliated against Ms. Harley by engaging in conduct, including but not limited to, threatening Ms. Harley with the demotion and the loss of her benefits for requesting reasonable accommodations, denying Ms. Harley the terms and conditions of employment afforded to other non-pregnant employees, refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly

disclosing Ms. Harley's private medical information without her consent, failing to properly administer Ms. Harley's benefits, and unlawfully constructively terminating Ms. Harley's employment.

115. Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harley because of her protected activities.

116. Any reasonable employee in Ms. Harley's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Harley was forced to endure.

117. Defendant's alleged basis for its adverse employment actions against Ms. Harley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

118. As a direct and proximate result of the Defendant's retaliatory conduct in violation of Title VII, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

119. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harley's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

120. The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under Title VII.

121.     Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT III
### 42 U.S.C. § 2000gg-1
### *PWFA Discrimination*

122.     Ms. Harley reincorporates the factual allegations in Paragraphs 21 through 94.

123.     The PWFA provides that it is unlawful for an employer to not make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless the employer can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C. § 2000gg-1(1).

124.     It is also unlawful under the PWFA for an employer to require a qualified employee affected by pregnancy, childbirth, or related medical conditions to accept accommodations that were not arrived at through an interactive process, or to take leave when another reasonable accommodation could be provided. 42 U.S.C. §§ 2000gg-1(2), (4).

125.     The PWFA further provides that it is unlawful for an employer to deny employment opportunities, or to take an adverse action in the terms, conditions, or privileges of employment, against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee. 42 U.S.C. §§ 2000gg-1(3), (5).

126.     A known limitation under the PWFA includes any physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000gg(4).

127.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

128.     Ms. Harley was a qualified employee and had known physical impairments and limitations related to her pregnancy, including but not limited to severe swelling (edema), persistent fatigue, frequent nausea, episodes of lightheadedness, difficulty standing for prolonged periods, and an inability to perform heavy lifting. These conditions substantially limited her ability to perform major life activities such as standing, walking, and lifting.

129.     Ms. Harley also suffered from a recognized disability, specifically a pregnancy-related medical condition known as Protein S Deficiency. This condition substantially limits one or more major life activities, including her ability to work, perform manual tasks, and manage bodily functions associated with pregnancy. Protein S Deficiency is a blood clotting disorder that significantly increases the risk of developing blood clots, especially during pregnancy, leading to severe physical limitations and necessitating medical supervision.

130.     Ms. Harley requested reasonable accommodations shifts due to her disability and pregnancy-related medical including but not limited to, being provided an extra day off between Ms. Harley's shifts, limiting the length of her work shifts to a maximum of eight hours, and scheduling Ms. Harley for morning shifts rather than evening shifts.

131.     Defendant failed to reasonably accommodate Ms. Harley's pregnancy and pregnancy-related conditions and failed to engage in an interactive process regarding her accommodation requests.

132.     Defendant forced Ms. Harley to accept accommodations without engaging in an interactive process and forced Ms. Harley to take leave when there were other reasonable accommodations available.

133.     Defendant further subjected Ms. Harley to discriminatory treatment on the basis of her pregnancy, including but not limited to, denying Ms. Harley the terms and conditions of

employment afforded to other non-pregnant employees, refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly disclosing Ms. Harley's private medical information without her consent, failing to properly administer Ms. Harley's benefits, and unlawfully constructively terminating Ms. Harley's employment.

134.    Defendant targeted Ms. Harley because she was pregnant and because of her known limitations related to her pregnancy. No similarly situated non-pregnant employees endured the discriminatory conduct that Ms. Harley was forced to endure.

135.    The discriminatory actions of the Defendant against Ms. Harley, as described and set forth above, constitute an adverse employment action for the purposes of the PWFA.  In subjecting Ms. Harley to an adverse employment action, the Defendant intentionally discriminated against Ms. Harley with respect to the compensation, terms, conditions, or privileges of her employment.

136.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the PWFA, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

137.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Harley's rights under the PWFA, warranting the imposition of punitive damages, in addition to compensatory damages.

138.    The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under the PWFA.

139.    Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT IV**
**42 U.S.C. § 2000gg-2(f)**
***PWFA Retaliation***

140.    Ms. Harley reincorporates the factual allegations in Paragraphs 21 through 94.

141.    The PWFA prohibits retaliation in any manner against a person who has opposed an unlawful discriminatory practice or act, or who has participated in any investigation, proceeding, or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000gg-2(f)(1).

142.    The PWFA further prohibits an employer from coercing, intimidating, threatening, or interfering with any individual's exercise of any protected rights, or on account of any individual having exercised any protected rights. 42 U.S.C. § 2000gg-2(f)(2).

143.    Ms. Harley had known limitations related to her pregnancy and related medical conditions, and was therefore protected under the PWFA.

144.    Ms. Harley engaged in a protected activity under the PWFA when she informed Defendant of known limitations due to her pregnancy, requested reasonable accommodations from Defendant on account of her known limitations, and when she opposed Defendant's unlawful conduct in violation of the PWFA.

145.    In response to Ms. Harley asserting her protected rights under the PWFA, the Defendant retaliated against Ms. Harley.

146.    Defendant retaliated against Ms. Harley and interfered with Ms. Harley's rights by engaging in conduct, including but not limited to, threatening Ms. Harley with the demotion and

the loss of her benefits for requesting reasonable accommodations, denying Ms. Harley the terms and conditions of employment afforded to other non-pregnant employees refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly disclosing Ms. Harley's private medical information without her consent, failing to properly administer Ms. Harley's benefits, and unlawfully constructively terminating Ms. Harley's employment.

147.    Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harley because of her protected activities.

148.    Any reasonable employee in Ms. Harley's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Harley was forced to endure.

149.    Defendant's alleged bases for its adverse employment actions against Ms. Harley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

150.    As a direct and proximate result of the Defendant's retaliatory conduct in violation of the PWFA, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

151.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harley's rights under the PWFA, warranting the imposition of punitive damages in addition to compensatory damages.

152.    The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under the PWFA.

153.    Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT V
### 42 U.S.C. § 12112
### *ADA Disability Discrimination*

154.    Ms. Harley reincorporates the factual allegations in Paragraphs 21 through 94.

155.    The ADA requires than an employer make reasonable accommodations to the known limitations of a qualified individual with a disability and to engage in an interactive process to arrive at the accommodation. 42 U.S.C. § 12112(b)(5).

156.    At all relevant times, Ms. Harley was an individual with a disability within the meaning of the 42 U.S.C. § 12102(1), as she suffered from pregnancy-related medical conditions, including her Protein S Deficiency, which substantially limited one or more major life activities such as performing manual tasks, walking and working.

157.    Ms. Harley had impairments that would substantially limit one or more major life activities and bodily functions, had a record of the impairment, and was regarded by the Defendant as having such impairments.

158.    Ms. Harley had known physical impairments and limitations related to her pregnancy, including but not limited to severe swelling (edema), persistent fatigue, frequent nausea, episodes of lightheadedness, difficulty standing for prolonged periods, and an inability to perform heavy lifting. These conditions substantially limited her ability to perform major life activities such as standing, walking, and lifting.

159.    Ms. Harley also suffered from a recognized disability, specifically a pregnancy-related medical condition known as Protein S Deficiency. This condition substantially limits one or more major life activities, including her ability to work, perform manual tasks, and manage bodily functions associated with pregnancy. Protein S Deficiency is a blood clotting disorder that significantly increases the risk of developing blood clots, especially during pregnancy, leading to severe physical limitations and necessitating medical supervision.

160.    Ms. Harley was a "qualified individual" within the meaning of 42 U.S.C. § 12111(8), as she could perform the essential functions of her job with or without reasonable accommodations.

161.    Ms. Harley requested accommodations for her disability from Defendant including but not limited to, being provided an extra day off between Ms. Harley's shifts, limiting the length of her work shifts to a maximum of eight hours, and scheduling Ms. Harley for morning shifts rather than evening shifts.

162.    Defendant failed to reasonably accommodate Ms. Harley's disability and failed to engage in an interactive process regarding her accommodation requests.

163.    Defendant discriminated against Ms. Harley with respect to the terms, conditions, and privileges of her employment because of her disability, in violation of the ADA. Defendant's discriminatory conduct included but was not limited to, failing to accommodate Ms. Harley's disability, denying Ms. Harley the terms and conditions of employment afforded to other non-disabled employees, refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly disclosing Ms. Harley's private medical information without her consent, failing to properly administer Ms. Harley's benefits, and unlawfully constructively terminating Ms. Harley's employment.

164.    Defendant discriminated against Ms. Harley in violation of the ADA and interfered with Ms. Harley's enjoyment of all benefits, privileges, terms, and conditions of her employment.

165.    The discriminatory actions of the Defendant against Ms. Harley, as described and set forth above, constitute an adverse employment action for the purposes of ADA.  In subjecting Ms. Harley to adverse employment actions, the Defendant intentionally discriminated against Ms. Harley with respect to the compensation, terms, conditions, or privileges of her employment.

166.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the ADA, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

167.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Harley's rights under ADA, warranting the imposition of punitive damages, in addition to compensatory damages.

168.    The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under the ADA.

169.    Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT VI**
**42 U.S.C. § 12203**
*ADA Retaliation*

170.    Ms. Harley reincorporates the factual allegations in Paragraphs 21 through 94.

171.    The ADA prohibits retaliation against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 12203(a).

172.    At all relevant times, Ms. Harley was an individual with a disability within the meaning of the 42 U.S.C. § 12102(1), as she suffered from pregnancy-related medical conditions, including her Protein S Deficiency, which substantially limited one or more major life activities such as performing manual tasks, walking and working.

173.    Ms. Harley had impairments that would substantially limit one or more major life activities and bodily functions, had a record of the impairment, and was regarded by the Defendant as having such impairments.

174.    Ms. Harley had known physical impairments and limitations related to her pregnancy, including but not limited to severe swelling (edema), persistent fatigue, frequent nausea, episodes of lightheadedness, difficulty standing for prolonged periods, and an inability to perform heavy lifting. These conditions substantially limited her ability to perform major life activities such as standing, walking, and lifting.

175.    Ms. Harley also suffered from a recognized disability, specifically a pregnancy-related medical condition known as Protein S Deficiency. This condition substantially limits one or more major life activities, including her ability to work, perform manual tasks, and manage bodily functions associated with pregnancy. Protein S Deficiency is a blood clotting disorder that significantly increases the risk of developing blood clots, especially during pregnancy, leading to severe physical limitations and necessitating medical supervision.

176.    Ms. Harley engaged in a protected activity under the ADA when she informed Defendant of known limitations due to her disability, requested reasonable accommodations from

Defendant on account of her known limitations, and when she opposed Defendant's unlawful conduct in violation of the ADA.

177.    In response to Ms. Harley asserting her protected rights under the ADA, the Defendant retaliated against Ms. Harley.

178.    Defendant retaliated against Ms. Harley and interfered with Ms. Harley's rights by engaging in conduct, including but not limited to, threatening Ms. Harley with the demotion and the loss of her benefits for requesting reasonable accommodations, denying Ms. Harley the terms and conditions of employment afforded to other non-disabled employees, refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly disclosing Ms. Harley's private medical information without her consent, failing to properly administer Ms. Harley's benefits, and unlawfully constructively terminating Ms. Harley's employment.

179.    Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harley because of her protected activities.

180.    Any reasonable employee in Ms. Harley's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Harley was forced to endure.

181.    Defendant's alleged bases for its adverse employment actions against Ms. Harley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

182.    As a direct and proximate result of the Defendant's retaliatory conduct in violation of the ADA, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harley has also suffered and

will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

183.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Harley's rights under the ADA, warranting the imposition of punitive damages in addition to compensatory damages.

184.    The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under the ADA.

185.    Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT VII**
**29 U.S.C. § 2615**
***FMLA Interference***

186.    Ms. Harley reincorporates the factual allegations in Paragraphs 21 through 94.

187.    The FMLA prohibits employers from interfering with, restraining, or denying the exercise or attempted exercise of any right protected by the FMLA. 29 U.S.C. § 2615(a).

188.    By nature of Ms. Harley's employment with Defendant, Ms. Harley was an eligible employee and was entitled to leave benefits under the FMLA.

189.    Defendant was on notice of Ms. Harley's entitlement to FMLA leave during her employment.

190.    Ms. Harley was entitled to FMLA leave for her pregnancy and for the 12-month period following the birth of her child. 29 C.F.R. § 825.120.

191.    Ms. Harley was also entitled to FMLA leave for her serious health condition, as defined in 29 U.S.C. § 2611(11).

192.     Beginning in or around October 2022, Ms. Harley exercised and/or attempted to exercise her right to leave benefits under the FMLA.

193.     Defendant violated the FMLA by unlawfully interfering, restraining, and denying Ms. Harley's rights under the FMLA, including but not limited to, interfering with Ms. Harley's use and/or attempted use of her leave benefits, openly disclosing Ms. Harley's private medical information without her consent, improperly administering Ms. Harley's leave benefits, and failing to advise Ms. Harley of her rights under the FMLA.

194.     As a result of Defendant's unlawful conduct, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

195.     The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under the FMLA.

196.     Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT VIII**
**29 U.S.C. § 2615**
***FMLA Retaliation***

197.     Ms. Harley incorporates the factual allegations in Paragraphs 21 through 94.

198.     The FMLA prohibits employers from retaliating against an employee in any manner for having exercised or attempted to exercise protected rights under the FMLA or using the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c).

199.    The FMLA prohibits employers from retaliating against an employee in any manner for opposing or complaining about any unlawful practice under the FMLA. 29 C.F.R. § 825.220(a)(2).

200.    By nature of Ms. Harley's employment with Defendant, Ms. Harley was an eligible employee and was entitled to leave benefits under the FMLA.

201.    Defendant was on notice of Ms. Harley's entitlement to FMLA leave during her employment.

202.    Ms. Harley was entitled to FMLA leave for her pregnancy and for the 12-month period following the birth of her child. 29 C.F.R. § 825.120.

203.    Ms. Harley was also entitled to FMLA leave for her serious health condition, as defined in 29 U.S.C. § 2611(11).

204.    Ms. Harley engaged in a protected activity when she exercised and/or attempted to exercise her right to leave benefits under the FMLA and when she opposed the Defendant's unlawful conduct in violation of the FMLA.

205.    Ms. Harley acted in good faith and with the objective and subjective belief that she was entitled to leave benefits under the FMLA and that Defendant had committed violations of the FMLA.

206.    Defendant retaliated against Ms. Harley by engaging in conduct, including but not limited to, threatening Ms. Harley with the demotion and the loss of her benefits, refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly disclosing Ms. Harley's private medical information without her consent, and unlawfully constructively terminating Ms. Harley's employment.

207.    Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harley because of her protected activities.

208.    Any reasonable employee in Ms. Harley's position would be dissuaded from opposing unlawful conduct if they knew they would be subjected to the same kind of treatment that Ms. Harley was subjected to.

209.    Defendant's alleged bases for its adverse employment actions against Ms. Harley are pretextual and have been asserted only to cover up the retaliatory nature of the Defendant's conduct.

210.    As a result of Defendant's unlawful conduct, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

211.    The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under the FMLA.

212.    Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT IX**
**§ 760.10(1), Fla. Stat.**
*FCRA Discrimination*

213.    Ms. Harley reincorporates the factual allegations in Paragraphs 21 through 94.

214.     The FCRA prohibits employment discrimination against an individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex, pregnancy, or disability. § 760.10(1)(a), Fla. Stat.

215.     Ms. Harley was a member of multiple protected classes under the FCRA, as she was a female, she was pregnant, and suffered from a disability (Protein S Deficiency and associated conditions), which substantially limited one or more life activities and bodily functions.

216.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

217.     Ms. Harley was a "qualified individual" under the FCRA she could perform the essential functions of her job with or without reasonable accommodations. § 760.02(8) Fla. Stat.

218.     Defendant discriminated against Ms. Harley on the basis of her sex, pregnancy, and disability. This discriminatory conduct included but was not limited to failing to accommodate Ms. Harley's pregnancy and pregnancy-related conditions, denying Ms. Harley the terms and conditions of employment afforded to other non-pregnant employees, refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly disclosing Ms. Harley's private medical information without her consent, failing to properly administer Ms. Harley's benefits, and unlawfully constructively terminating Ms. Harley's employment.

219.     Defendant targeted Ms. Harley on the basis of her protected class status. No similarly situated employees outside of her protected classes endured the discriminatory conduct that Ms. Harley was forced to endure.

220.     The discriminatory actions of the Defendant against Ms. Harley, as described and set forth above, constitute an adverse employment action for purposes of the FCRA.  In subjecting

Ms. Harley to adverse employment actions, the Defendant intentionally discriminated against Ms. Harley with respect to the compensation, terms, conditions, or privileges of her employment.

221. Even if Defendant could assert legitimate reasons for its adverse actions taken against Ms. Harley, her protected class status, at a minimum, was a motivating factor for Defendant's discriminatory conduct and Ms. Harley explicitly reserves the right to pursue a mixed-motive theory against Defendant.

222. As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the FCRA, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

223. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Harley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

224. The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under the FCRA.

225. Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT X
### § 760.10(7), Fla. Stat.
### *FCRA Retaliation*

226. Ms. Harley21rporates the factual allegations in Paragraphs 21 through 94.

227.    The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

228.    Ms. Harley was a member of multiple protected classes under the FCRA, as she was a female, she was pregnant, and suffered from a disability (Protein S Deficiency and associated conditions), which substantially limited one or more life activities and bodily functions.

229.    Ms. Harley engaged in protected activities under the FCRA by requesting reasonable accommodations for her disability and pregnancy, and by opposing Defendant's discriminatory practices.

230.    In response to Ms. Harley asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Ms. Harley.

231.    Defendant retaliated against Ms. Harley by engaging in conduct, threatening Ms. Harley with the demotion and the loss of her benefits for requesting reasonable accommodations, denying Ms. Harley the terms and conditions of employment afforded to other non-pregnant employees, refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly disclosing Ms. Harley's private medical information without her consent, failing to properly administer Ms. Harley's benefits, and unlawfully constructively terminating Ms. Harley's employment.

232.    Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harley because of her protected activities.

233.    Defendant's retaliatory actions were causally connected to Ms. Harley's protected activities.

234.    Any reasonable employee in Ms. Harley's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Harley was forced to endure.

235.    Defendant's alleged bases for its adverse employment actions against Ms. Harley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

236.    As a direct and proximate result of the Defendant's retaliatory conduct in violation of the FCRA, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

237.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harley's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

238.    The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under the FCRA.

239.    Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XI**
**§ 11A-26(1), Code of Miami-Dade County**
*MDHRO Discrimination*

240.    Ms. Harley reincorporates the factual allegations in Paragraphs 21 through 94.

241.    The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's sex, pregnancy, or disability. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26.

242.    Ms. Harley was a member of multiple protected classes under the MDHRO, as she was a female, she was pregnant, and suffered from a disability (Protein S Deficiency and associated conditions), which substantially limited one or more life activities and bodily functions.

243.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

244.    Ms. Harley was a qualified individual under the MDHRO she could perform the essential functions of her job with or without reasonable accommodations.

245.    Defendant discriminated against Ms. Harley on the basis of her sex, pregnancy, and disability. This discriminatory conduct included but was not limited to failing to accommodate Ms. Harley's pregnancy and pregnancy-related conditions, denying Ms. Harley the terms and conditions of employment afforded to other non-pregnant employees, refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly disclosing Ms. Harley's private medical information without her consent, failing to properly administer Ms. Harley's benefits, and unlawfully constructively terminating Ms. Harley's employment.

246.    Defendant targeted Ms. Harley on the basis of her protected class status. No similarly situated employees outside of her protected classes endured the discriminatory conduct that Ms. Harley was forced to endure.

247.    The discriminatory actions of the Defendant against Ms. Harley, as described and set forth above, constitute an adverse employment action for purposes of the MDHRO.   In subjecting Ms. Harley to adverse employment actions, the Defendant intentionally discriminated against Ms. Harley with respect to the compensation, terms, conditions, or privileges of her employment.

248.    Even if Defendant could assert legitimate reasons for its adverse actions taken against Ms. Harley, her protected class status, at a minimum, was a motivating factor for Defendant's discriminatory conduct and Ms. Harley explicitly reserves the right to pursue a mixed-motive theory against Defendant.

249.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the MDHRO, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

250.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Harley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

251.    The conduct of the Defendant deprived Ms. Harley of her statutory rights guaranteed under the MDHRO.

252.    Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT XII
### § 11A-26(4), Code of Miami-Dade County
#### *MDHRO Retaliation*

253.     Ms. Harley reincorporates the factual allegations in Paragraphs 21 through 94.

254.     The MDHRO prohibits retaliation in manner against a person who has opposed a discriminatory practice, or who has testified, assisted, or participated, in any manner in an investigation, proceeding or hearing related to an unlawful discriminatory practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(4).

255.     Ms. Harley was a member of multiple protected classes under the MDHRO, as she was a female, she was pregnant, and suffered from a disability (Protein S Deficiency and associated conditions), which substantially limited one or more life activities and bodily functions.

256.     Ms. Harley in protected activities under the MDHRO by requesting reasonable accommodations for her disability and pregnancy, and by opposing Defendant's discriminatory practices.

257.     In response to Ms. Harley asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Ms. Harley.

258.     Defendant retaliated by engaging in conduct, threatening Ms. Harley with the demotion and the loss of her benefits for requesting reasonable accommodations, denying Ms. Harley the terms and conditions of employment afforded to other non-pregnant employees, refusing to pay Ms. Harley equal wages commensurate with her work, issuing Ms. Harley inaccurate and negative performance evaluations, openly disclosing Ms. Harley's private medical information without her consent, failing to properly administer Ms. Harley's benefits, and unlawfully constructively terminating Ms. Harley's employment.

259.    Defendant took the above-mentioned materially adverse actions, among others, against Ms. Harley because of her protected activities.

260.    Defendant's retaliatory actions were causally connected to Ms. Harley's protected activities.

261.    Any reasonable employee in Ms. Harley's position would be dissuaded from reporting sexual discrimination if they knew that they would be subjected to the kind of treatment that Ms. Harley was forced to endure.

262.    Defendant's alleged bases for its adverse employment actions against Ms. Harley are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

263.    As a direct and proximate result of Defendant's retaliatory conduct in violation of the MDHRO, Ms. Harley has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Harley has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Harley accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

264.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Harley's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

265.    The conduct of Defendant deprived Ms. Harley of her statutory rights guaranteed under the MDHRO.

266.    Ms. Harley further requests that her attorney's fees and costs be awarded as permitted by law.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of Title VII, the PWFA, the ADA, the FMLA, the FCRA, and the MDHRO.

Dated:  Miami, Florida
July 2, 2024,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.
Florida Bar No.: 1038749
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Kyle@dereksmithlaw.com